DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| **FLAGSTAR BANK, FSB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 2013-0052 |
| | ) | |
| **JOHN M. CANEGATA a/k/a JOHN CANEGATA** **and THAYS E. CANEGATA a/k/a THAYS CANEGATA,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**Attorneys:**
**A. Jennings Stone, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff Flagstar Bank, FSB ("Flagstar") against Defendants John M. Canegata a/k/a John Canegata and Thays E. Canegata a/k/a Thays Canegata (the "Canegatas"). (Dkt. No. 12). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment.

## BACKGROUND

On May 22, 2013, Flagstar filed a Complaint against the Canegatas, alleging causes of action for debt and foreclosure of real property mortgage. (Compl., Dkt. No. 1). Flagstar asserts that the Canegatas are titleholders of record to real property ("the Property"), which is described in the Warranty Deed attached to the Motion for Default Judgment as:

> Plot No. 141, Estate Cotton Valley, East End Quarter "A", St. Croix, U.S. Virgin Islands, and consisting of approximately 0.981 US acres more or less, as more

>fully shown and described on OLG Drawing No. 1383, dated April 5, 1963, revised May 7, 1981.

(Dkt. No. 13-1). The Complaint alleges that, on January 11, 2010, the Canegatas, jointly and severally, executed and delivered to Flagstar a promissory note (the "Note"), which obligated them to pay the principal amount of $309,294.00, together with interest at a rate of 5.250% per annum, in consecutive monthly installments of $1,707.93 beginning July 1, 2011. (Dkt. No. 1, ¶¶ 7-8. To secure payment on the Note, the Canegatas granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Flagstar and its successors and assigns, a first priority mortgage dated January 11, 2010 over the Property (the "Mortgage"), which provided that the Canegatas would pay to Flagstar the payments due under the Note. *Id.* ¶¶ 9-10.

The Complaint further alleges that, on or about November 1, 2012, the Canegatas defaulted under the terms and conditions of the Note and under the terms and conditions of the Mortgage, in that monthly installments of principal and interest became due and were not paid; that Flagstar gave notice of default to the Canegatas by correspondence dated December 17, 2012, advising them that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage lien; and that, as of the date of the Complaint, the default had not been cured. *Id.* ¶¶ 11-15. On April 15, 2013, MERS—for itself and as nominee for Flagstar—assigned its entire interest in the Property to Flagstar (the "MERS Assignment"). *Id.* ¶ 17.

With regard to the debt cause of action, the Complaint alleges that the Canegatas owe Flagstar the sum of $292,585.37 in unpaid principal balance; plus accrued interest, advances, expenses, fees, costs, and late charges. *Id.* ¶ 20. Flagstar further asserts that, under the terms of the Mortgage, it is entitled to be reimbursed for any insurance premiums, taxes, or other charges that it pays with regard to the Property, and that under the terms of the Note and Mortgage, it is

entitled to be reimbursed for reasonable attorney's fees and other expenses it has incurred to enforce payment of the Note or incidental to foreclosure of the Property. *Id.* ¶¶ 21-23.

With regard to the foreclosure cause of action, the Complaint alleges that Flagstar has actual possession of and ownership rights to the Note and Mortgage, allowing it to maintain the foreclosure action; that the Canegatas are in default under the terms and conditions of the Mortgage; and Flagstar is entitled to foreclose its lien on the Property, sell the Property to satisfy the Note, and recover any deficiency from the Canegatas. *Id.* ¶¶ 26-28.

The Canegatas were personally served with copies of the Summons and Complaint on June 1, 2013. (Dkt. Nos. 4, 5). They have neither answered the Complaint nor appeared in this action. On August 1, 2013, Flagstar filed an Application for Entry of Default against the Canegatas. (Dkt. No. 6). The Clerk of Court entered default against the Canegatas on August 12, 2013. (Dkt. No. 8).

On March 11, 2014, Flagstar filed its Motion for Default Judgment (the "Motion") (Dkt. No. 12), along with a Memorandum of Law in Support of Motion for Default Judgment (Dkt. No. 13), an Affidavit of Indebtedness (Dkt. No. 14), and a Declaration of Counsel in Support of Fees and Costs. (Dkt. No. 15). In its Memorandum of Law, Flagstar argues that the procedural elements for default judgment have been satisfied because: the Canegatas was properly served with copies of the Summons and Complaint; the Clerk entered default against them; and they are not infants or incompetent persons, nor in the military service. (Dkt. No. 13 at 6-7). Flagstar further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that: title to the Property is held by the Canegatas; the Canegatas executed the Note and the accompanying Mortgage; Flagstar has possession of the original Note and is holder of the Mortgage in its own right and by

3

way of the MERS Assignment; the Canegatas defaulted under the terms of both the Note and the Mortgage; Flagstar gave the Canegatas proper notice of the default and they failed to cure the default; and Flagstar elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* at 7. In addition, Flagstar asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 7-10.

In support of the Motion, Plaintiff filed an Affidavit of Indebtedness, signed by Serge Alexis, a Flagstar Foreclosure Analyst, who explained how the Bank's document management system keeps track, and maintains records, of debit and credit transactions related to the Mortgage and original Note. (Dkt. No. 14, ¶¶ 3-8). The Affidavit sets forth the amounts due and owing through September 14, 2013: $292,585.37 in unpaid principal balance; interest from October 1, 2012 through September 14, 2013 of $14,627.76; escrow advances of $4,062.31, consisting of county taxes and hazard insurance; accumulated late fees of $255.87; and a recoverable balance of $150.50 consisting of inspections or other property preservation fees; for a total amount due of $311,681.81. *Id.* ¶ 10. Mr. Alexis asserts that interest accrues at the per diem rate of $42.08. *Id.* ¶ 14. He also states that, based on the information he reviewed in connection with the loan, he had no information indicating that the Canegatas were either minors or incompetent. *Id.* ¶16. In addition, pursuant to an investigation Flagstar conducted on November 21, 2014 using official online resources provided by the Department of Defense's Manpower Data Center, there was no record that the Canegatas were active members of the military service. (Dkt. Nos. 16, 16-1, 16-2).

In the Declaration of Counsel in Support of Costs and Attorney's Fees, Flagstar's Counsel, A. Jennings Stone, Esq., averred that he, as a Senior Associate Attorney, and Attorney

4

Nycole Thompson, billed at $250.00 per hour on this matter, and that paralegals Carol Hart and Lola Pierre billed at $125.00 per hour. (Dkt. No. 15). He attached billing records showing that the total time spent on this matter was 14.75 hours through March 10, 2014; that the total amount of attorney's fees incurred was $3,500.00; and that the total amount of costs expended was $801.72. *Id.*; Dkt. No. 15-1.

## APPLICABLE LEGAL PRINCIPLES

In an application for an entry of default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).

An application for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May

5

28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## ANALYSIS

### A. Default Judgment

Flagstar has satisfied all of the requirements necessary to obtain a default judgment against the Canegatas. It has shown that: (1) default was entered against the Canegatas by the Clerk of Court (Dkt. No. 8); (2) the Canegatas have not appeared; (3) the Canegatas are neither infants nor incompetent persons (Dkt. No. 14, ¶ 16); and (4) the Canegatas were validly served with process. (Dkt. Nos. 4, 5). In addition, Flagstar provided copies of Military Status Reports from the Department of Defense Manpower Data Center showing that John Canegata and Thys Canegata are not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. Nos. 16-1, 16-2). Flagstar has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 14).

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to Flagstar resulting from the Canegatas' breach of their contractual obligations, together with the apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. In addition, the Canegatas' default was a result of their culpable conduct as evidenced by their refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal

communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Consequently, default judgment is appropriate.

### B. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b).

Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Dkt. No. 14-1, ¶ 6(E); Dkt. No. 14-2, ¶ 19). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and

reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

Assessing the second step first—whether the hourly rate sought is reasonable—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Flagstar has also provided affirmations from three Virgin Islands attorneys who aver that the typical hourly rate for similar services charged by comparable attorneys in the Virgin Islands is between $250.00 and $300.00 per hour. (Dkt. Nos. 13-3, 13-4, 13-5). The Court therefore concludes that the $250.00 per hour rate charged by Flagstar's attorneys is reasonable and falls within the scope of rates for such services. (Dkt. No. 15).

Turning to the first step, Flagstar seeks $3,500.00 in attorney's fees as compensation for 14.75 hours of work billed in this matter. Based on the Court's review of the documentation provided, the Court finds that the hours billed were reasonably expended. *See, e.g., Bank of America v. Deshazer*, 2014 WL 7450487, at *5 (D.V.I. Dec. 30, 2014) (awarding $3,645.00 in attorney's fees). Based on the foregoing, the Court concludes that the $3,500.00 sought in attorney's fees is reasonable. Accordingly, the Court will award attorney's fees in that amount.

With regard to costs, under the terms of the Mortgage, the Canegatas agreed to "pay[] all expenses incurred in enforcing this Security Instrument[.]" (Dkt. No. 14-2, ¶ 19). The Court infers that in order for costs to be reimbursed, they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs). The Bank is seeking

reimbursement of $801.72 for the following costs: title search, recording fees, on-line search on Accurint (People/Business search), filing fees for Complaint, messenger service, process server, and postage. (Dkt. No. 15-1). The Court finds that these costs are reasonable, and—pursuant to the plain language of the Mortgage contract—will award costs in the amount of $801.72.

## CONCLUSION

Flagstar has satisfied the requirements necessary for entry of a default judgment against John M. Canegata and Thays E. Canegata. Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 12) on the debt and foreclosure causes of action will be granted. In addition, the Court will award $3,500.00 in attorney's fees and $801.72 in costs, for a total award of $4,301.72 in attorney's fees and costs through March 10, 2014.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: February 20, 2015                _____/s/_____
                                       WILMA A. LEWIS
                                       Chief Judge